# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 16, 2005

128340

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

KENNETH JAY HOULIHAN,
        Defendant-Appellant.

_____/

Clifford W. Taylor
  Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
      Justices

SC: 128340
COA: 256534
Kent CC: 01-002731-FC

On November 8, 2005, the Court heard oral argument on the application for leave to appeal the February 10, 2005 order of the Court of Appeals. On order of the Court, the application for leave to appeal is again considered. It appears to this Court that the case of *Simmons v Metrish*, No. 03-2609, is pending in the United States Court of Appeals for the Sixth Circuit, on remand from the U.S. Supreme Court for reconsideration in light of *Halbert v Michigan*, 545 US ___; 125 S Ct 2582; 162 L Ed 2d 552 (2005). This Court recognizes that the Sixth Circuit decision in *Simmons* will not be binding on this Court, see *Abela v General Motors Corp*, 469 Mich 603, 607 (2004). But if this Court were to rule that *Halbert* does not apply to motions brought under MCR 6.502, and the Sixth Circuit were to grant relief to the defendant in *Simmons*, Michigan defendants might then commonly receive relief in federal habeas proceedings inconsistent with the results they might receive from Michigan courts. Given these circumstances, we ORDER that the application be held in ABEYANCE pending the decision in that case.

KELLY, J., concurs and states as follows:

I concur in abeying this matter for the decision of the United States Court of Appeals for the Sixth Circuit in *Simmons v Metrish*, (Docket No. 03-2609). I cast this vote notwithstanding my strong preference to remand this and all similar cases for the appointment of counsel. Unfortunately, insufficient votes exist on the Court to support a remand order, and without my vote to hold the case in abeyance, the decision below would stand, denying counsel to defendant.

The issue presented both in *Simmons* and in this case is whether the United States Supreme Court's decision in *Halbert v Michigan*[1], applies retroactively to Michigan cases

---

[1] ___ US ___; 125 S Ct 2582; 162 L Ed 2d 552 (2005).

on collateral review. *Halbert* held that Michigan must appoint legal counsel for indigent defendants who seek in the Court of Appeals discretionary review of their plea-based convictions. I believe that we should apply *Halbert* retroactively to other cases that are on collateral review.

The general rule in Michigan is that judicial decisions are given complete retroactive effect. Prospective application is given only to decisions that overrule clear and uncontradicted case law. *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240 (1986). This is because the latter cases are found to be "unexpected" and "indefensible" in light of the law existing at the time of the conduct in question. *People v Doyle*, 451 Mich 93, 104 (1996).

To determine whether a decision establishes a new rule of criminal procedure, federal courts apply the analysis of *Teague v Lane*, 489 US 288 (1989). Retroactivity is required unless the rule is new. *Id.* at 301. A rule is not considered new unless it "'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.'" *Graham v Collins*, 506 US 461, 467 (1993), *quoting Teague, supra* at 301 (emphasis omitted).

The *Halbert* decision relied on the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the federal constitution[2] and on the Court's earlier decision in *Douglas v California*, 372 US 353 (1963). *Douglas* held that the federal Due Process Clause and Equal Protection Clause require a state to provide counsel for indigent defendants seeking first-tier review as of right in state appellate courts. *Id.* at 356. It was decided in 1963. The United States Supreme Court made it clear at that time that "there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.'" *Id.* at 355, quoting *Griffin v Illinois*, 351 US 12, 19 (1956).

Accordingly, it would be inaccurate to say that the Supreme Court's decision in *Halbert* was "unexpected" and "indefensible" when made in 2005. Nor would it be accurate to assert that *Halbert* announced a new federal rule. Admittedly, Michigan law did not allow for the appointment of appellate counsel to indigent defendants seeking first-tier review of a plea of guilty or nolo contendere. However, Michigan law did not then and does not now exist in a vacuum. The unequivocal language of *Douglas* left no doubt that principles of equal protection are violated when indigent defendants are treated

---

[2] US Const, Am XIV, § 1.

differently than rich defendants. For over forty years, indigent defendants have been entitled to the appointment of counsel at least in first-tier appeals as of right.

Hence, it seems likely that the federal courts in *Simmons* will rule that *Halbert* should be applied retroactively. Meanwhile, if this Court persists in failing to require appointed appellate counsel in this and all similar cases, hundreds of these cases likely will have to be reviewed again. This will enormously burden the appellate judicial system and work an untold hardship on many individuals caught up in it.

CAVANAGH, J., dissents and states as follows:

I disagree with the majority's decision to hold this case in abeyance pending the decision of the United States Court of Appeals for the Sixth Circuit in *Simmons v Metrish* (Docket No. 03-2609). It has been over five years since a majority of this Court determined that it was constitutionally permissible to deny counsel to indigent defendants who are appealing from a guilty or nolo contendere plea. See *People v Bulger*, 462 Mich 495 (2000). In *Bulger*, I vehemently disagreed with the position taken by the majority. Now, the United States Supreme Court has spoken, and it has held that a majority of this Court improperly and unconstitutionally denied counsel to Michigan's indigent defendants. See *Halbert v Michigan*, ___ US ___; 125 S Ct 2582; 162 L Ed 2d 552 (2005).

Since the majority's decision in *Bulger*, numerous indigent defendants who were constitutionally entitled to counsel have been improperly denied their rights. It is untenable to me that these indigent defendants must now continue to wait for their government to follow the United States Constitution. Indigent defendants were denied that which the Constitution requires, and I fail to see why the majority continues to prolong the deprivation of an indigent defendant's right to counsel. Accordingly, I believe counsel should be appointed without delay for those indigent defendants improperly denied their constitutional rights. In this case, as in the many other cases involving the deprivation of counsel to indigent defendants, justice delayed is truly justice denied.

MARKMAN, J., dissents and states as follows:

I respectfully dissent. Because I do not believe that the decision in *Halbert v Michigan*, 545 US ___; 125 S Ct 2582; 162 L Ed 2d 552 (2005), applies retroactively to permit a collateral attack upon a conviction that was already final at the time *Halbert* was released, I do not believe defendant is entitled to relief. Accordingly, I would simply deny leave to appeal.

## I. FACTS AND PROCEDURAL HISTORY

In 2001, defendant pleaded guilty to charges of first-degree criminal sexual conduct and child sexually abusive activity. He was sentenced to prison terms of 20 to 40 years for the CSC I conviction and 13 years, 4 months to 20 years for the child sexually abusive activity conviction. Defendant requested the appointment of appellate counsel, but the trial court denied the request pursuant to MCL 770.3a. Defendant filed a pro se application for leave to appeal, arguing that he was entitled to the appointment of appellate counsel, but the Court of Appeals denied leave on January 2, 2003. Defendant then sought leave to appeal in this Court, which denied leave to appeal on September 19, 2003. Defendant did not file a petition for certiorari in the United States Supreme Court.

In December 2003, defendant filed a motion for relief from judgment. The trial court denied the motion on May 27, 2004. The Court of Appeals denied defendant's delayed application for leave to appeal from the denial of that motion on February 10, 2005. Defendant then filed an application for leave to appeal in this Court. We scheduled oral argument on the application and directed the parties to file supplemental briefs "addressing whether the holding in [*Halbert*] retroactively applies to defendant's motion for relief from judgment from his plea-based conviction where the trial court denied his request for the appointment of appellate counsel to assist him in pursuing a direct appeal." *People v Houlihan*, 474 Mich 866 (2005).

## II. STANDARD OF REVIEW

This case requires us to determine whether the United States Supreme Court's decision in *Halbert* applies retroactively. Whether a decision applies retroactively is an issue of law, which this Court reviews de novo. *People v Sexton*, 458 Mich 43, 52 (1998).

## III. ANALYSIS
### A. *HALBERT*

In 1994, the voters of this state amended our Constitution to provide that "an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court" and not as of right. Const 1963, art 1, § 20. Thereafter, many trial court judges began to deny appointed appellate counsel to indigent defendants who had pleaded guilty. See *Kowalski v Tesmer*, 543 US 125 (2004). This Court upheld the constitutionality of this practice against challenges based on the "equal protection" and "due process" clauses of the Fourteenth Amendment to the United States Constitution. *People v Harris*, 470 Mich 882 (2004); *People v Bulger*, 462 Mich 495 (2000). The Legislature also codified this practice of limiting the appointment of appellate counsel in guilty plea cases. MCL.

770.3a.[3]

However, in *Halbert,* the United States Supreme Court held, in a six to three decision, that the "due process" and "equal protection" clauses of the Fourteenth Amendment to the United States Constitution require that counsel be appointed for defendants who have pleaded guilty and who seek to appeal their convictions to the Michigan Court of Appeals.

## B. RETROACTIVITY

While the Supreme Court in *Halbert* answered in the affirmative the question whether this state is obligated to provide appellate counsel for first-tier appeals from plea-based convictions, it did not specifically address the question whether such decision applies retroactively.

While this Court has had occasion to address the retroactivity issue a number of times in recent years, the wide variety of factual and jurisprudential considerations that have entered into our analyses in those cases suggest that it is difficult to articulate a bright-line rule. However, this case involves a retroactivity question regarding a decision of the United States Supreme Court concerning the meaning of the United States Constitution. For that reason, principles of retroactivity established by that Court govern the instant inquiry.[4]

---

[3] Specifically, MCL 770.3a(1) provided that, except for certain situations not here relevant, "a defendant who pleads guilty, guilty but mentally ill, or nolo contendere shall not have appellate counsel appointed for review of the defendant's conviction or sentence." The analysis contained herein with respect to defendant's "guilty plea" is equally applicable to the other types of pleas referenced in this statute.

[4] Even if this case were not controlled by federal retroactivity jurisprudence, the reasons underlying the federal standard in this area counsel in favor of its use here. An important justification for the retroactivity doctrine of *Teague v Lane,* 489 US 288 (1989), concerns the state's interest in the finality of convictions. "[T]he *Teague* principle protects not only the reasonable judgments of state courts but also the States' interest in finality quite apart from their courts." *Beard v Banks,* 542 US 406, 413 (2004). *Teague* explained that the retroactive application of new rules on collateral review is potentially intrusive because "it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards." *Teague, supra* at 310 (emphasis omitted). Plainly, this interest in the finality of

(continued...)

The "general rule," *Teague v Lane*, 489 US 288, 310 (1989), is that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* That is, new rules are usually not applied retroactively. However, *Teague* adopted two exceptions to this general rule of nonretroactivity. First, a new rule should be applied retroactively if it places "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* at 307 (citation omitted). Second, a new rule should be applied retroactively "if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* (citation and internal quotation marks omitted).

Under *Teague*, the determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step inquiry: (1) the court must determine when the defendant's conviction became final; (2) the court must ascertain the "'legal landscape as it then existed,'" i.e., whether the rule is "'new'" or, rather, was compelled by existing precedent; and (3) if the rule is new, the court must decide whether it falls within either of the two exceptions to nonretroactivity noted above. See, e.g., *Beard v Banks*, 542 US 406, 411 (2004) (citations omitted). I turn now to that inquiry.

## 1. DEFENDANT'S CONVICTION IS FINAL

A state court conviction is final "'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" *Beard, supra* at 411 (citation omitted). Here, defendant's direct appeal ended when this Court denied leave to appeal in 2003, and the time for filing a petition for certiorari elapsed without defendant's having filed such a petition. The decision in *Halbert*, meanwhile, was not released until June 23, 2005. Thus, defendant's conviction was clearly final for purposes of the *Teague* analysis.

Defendant and amicus Criminal Defense Attorneys of Michigan (CDAM) argue, however, that defendant's motion for relief from judgment should be viewed as essentially a continuation of his direct appeal. Defendant contends that some sort of tolling is required because he was denied the opportunity to have counsel assist him in

---

(...continued)
convictions is vindicated by the application of the *Teague* standard in state collateral proceedings as well as federal collateral proceedings.

the direct appeal. Likewise, CDAM argues that because defendant never had an appeal with the assistance of counsel, "he is in the position of someone whose case is still pending on direct review." CDAM brief at 8. CDAM suggests that defendant's direct appeal was "invalid" because defendant did not have the assistance of counsel in his direct appeal.

These arguments amount to classic bootstrapping. In asserting that this collateral proceeding should be viewed as a continuation of defendant's direct appeal because he was denied counsel, CDAM and defendant put the cart before the horse. They are essentially applying *Halbert* retroactively to conclude that the absence of counsel renders void the prior proceedings on direct review. But defendant cannot simply assume in this manner that *Halbert* applies retroactively, for that is the very issue that we must here decide. The Supreme Court has made clear that a court "'*must* apply *Teague* before considering the merits of [a] claim,'" *Beard, supra* at 412 (emphasis in original; citation omitted). Here, defendant and CDAM erroneously reach the merits of the claim *first* by assuming that defendant was entitled to counsel under *Halbert*, and *then* using that assumption to argue that defendant's conviction is not final. This circular logic is unavailing. Defendant's conviction was clearly final at the time *Halbert* was issued.

## 2. *HALBERT* IS A NEW RULE

The second step of the *Teague* inquiry requires us to ascertain whether the holding in *Halbert* constitutes a "new rule." In general, "'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.'" *Penry v Lynaugh*, 492 US 302, 314 (1989) (citation omitted). In determining whether the rule is "new," the Court must determine "whether 'a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.'" *O'Dell v Netherland*, 521 US 151, 156 (1997) (internal citations omitted). If not, then the rule is new.

In *Beard, supra* at 413, the Supreme Court made clear that the question is not merely whether the existing precedent might have *supported* the rule, but whether it *dictated* the rule. The rule must have been "'apparent to all reasonable jurists.'" *Id.* (Citation omitted.) *Beard* also noted that the existence of dissenting opinions in the case adopting the rule may be relevant (although not dispositive) in considering whether the existing precedent compelled the rule. *Id.* at 415-416.

Here, it is clear that existing precedent did not *dictate* the holding in *Halbert*. As both the majority and dissenting opinions in *Halbert* recognized, the issue in *Halbert* and *Bulger* essentially fell into a gap between two existing precedents: *Douglas v California*,

372 US 353 (1963), and *Ross v Moffitt*, 417 US 600 (1974) (see *Halbert, supra*, 545 US ___ n 2; 125 S Ct 2590 n 2; 162 L Ed 2d 564 n 2). The Supreme Court recognized that the defendant's case was "framed by" the two decisions concerning state-funded appellate counsel: *Douglas*, which held that the Fourteenth Amendment guarantees a criminal appellant the right to counsel on a first appeal as of right, and *Ross*, which held that the Fourteenth Amendment does not require a state to provide free counsel for indigent defendants seeking to take discretionary appeals to the highest state court. *Halbert* described the question before it as "essentially one of classification: With which of those decisions should [petitioner Halbert's] case be aligned?" *Id.*, 545 US ___; 125 S Ct 2590; 162 L Ed 2d 564.

Two aspects of the appellate process following plea-based convictions in Michigan eventually persuaded a majority of the Supreme Court that *Douglas*, not *Ross*, was controlling. First, in ruling on an application for leave to appeal, the Court of Appeals examines the merits of an appellant's claims. *Id.* "Of critical importance" to the Court's decision was that the Court of Appeals, unlike this Court, sits as an error-correction court. *Id.* Second, the Supreme Court concluded that indigent defendants pursuing first-tier review in the Court of Appeals are "generally ill equipped to represent themselves." *Id.* The Court reasoned that a defendant who pleads guilty in a Michigan court, although he relinquishes access to an appeal as of right, is entitled to apply for leave to appeal, and that entitlement is formally communicated to him. *Id.*

In both *Bulger* and *Halbert*, reasonable jurists could, and did, disagree regarding whether *Douglas* or *Ross* was the more relevant precedent. The six-justice Supreme Court majority in *Halbert*, and two justices dissenting from this Court's opinion in *Bulger*, concluded that *Douglas* was the more relevant precedent, because it established a right to counsel in a first-tier review of a criminal conviction. But the four-justice majority in *Bulger* (a case in which I was recused) also articulated a reasonable argument that *Ross* was more applicable, because it involved an application for discretionary review. Moreover, the three dissenting justices in *Halbert* adopted a considerable part of the rationale of our majority opinion in *Bulger*.

In short, while *Douglas* may well have *supported* the holding in *Halbert*, it did not *compel* that holding. It simply was not apparent to four members of this Court or to three members of the United States Supreme Court that *Douglas required* the appointment of counsel to file an application for discretionary review of a guilty-plea conviction. Thus, reasonable jurists could, and did, disagree on this issue.

Further, it is apparent that the decision in *Halbert* "'imposes a new obligation'" on this State. *Penry, supra* at 314 (citation omitted). Specifically, Michigan courts are now required to appoint counsel for defendants convicted on their pleas who seek access to

first-tier appellate review in the Court of Appeals. This obligation did not exist before the decision in *Halbert*, and is therefore indisputably "new."

Accordingly, I have no difficulty concluding that the rule adopted in *Halbert* is a "new" rule for purposes of the *Teague* retroactivity analysis.

### 3. *TEAGUE* EXCEPTIONS ARE INAPPLICABLE

Having concluded that defendant's conviction was final by the time of *Halbert*, and that the *Halbert* rule is new, the final step in the *Teague* analysis requires a determination whether the rule nonetheless falls within one of the two exceptions outlined in *Teague*. *O'Dell, supra* at 156-157. The first exception pertains to new rules "'forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Id.* at 158 (citation omitted). There has been no suggestion that this exception applies in the instant case. The second, "even more circumscribed," exception, *id.*, permits retroactive application of "'"watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Graham v Collins*, 506 US 461, 478 (1993) (citations omitted).

The Supreme Court has repeatedly emphasized the limited scope of the second *Teague* exception, explaining that "'"it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty."'" *Beard, supra* at 417, quoting *O'Dell, supra* at 157, quoting *Graham, supra* at 478. The Court has observed that because any such rule "'would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge,' it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Beard, supra* at 417 (internal citations omitted). In other words, the requirements of this exception present an extremely high barrier—a barrier so high, in fact, that it has never yet been surmounted.

With this in mind, we must determine whether the right to appointed counsel to assist in an appeal from a plea-based conviction is a "'"watershed rule[] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding'" or "'"implicit in the concept of ordered liberty."'"" *Graham, supra* at 478 (citations omitted). I believe that it is not.

Defendant correctly observes that the Supreme Court has referred to the *Gideon*[5] right to counsel as an example of a rule that would fall into the second *Teague* exception. However, it is significant that in referring to this example, the Supreme Court observed, "In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of [*Gideon*] (right to counsel), and *only to this rule.*" *Beard, supra* at 417 (emphasis added). Yet, the Sixth Amendment right to counsel articulated in *Gideon* and its progeny has a constitutional basis distinct from that underlying the *Douglas* line of cases addressing the right to counsel *on appeal*, which are rooted in the "equal protection" and "due process" clauses of the Fourteenth Amendment.

The Sixth Amendment right to counsel at trial is fundamental to the fair and accurate determination of guilt because the trial is the focus of the entire criminal proceeding—the "main event," so to speak.[6] *Halbert*, however, does not speak to the procedure by which guilt is fairly and accurately determined. It does not address itself to the plea proceeding that, like its counterpart, the trial, is the "main event" of the criminal process. Defendant enjoyed his Sixth Amendment right to counsel at such plea proceeding, including the benefit of elaborate procedures designed to secure his knowing and intelligent waiver of rights incidental to the trial process. See, e.g., MCR 6.302. Rather, *Halbert* was concerned with a distinct procedure, the criminal appeal, which the state has no obligation to provide at all. See *Halbert, supra*, 545 US ___; 125 S Ct 2586; 162 L Ed 2d 559-560, citing *McKane v Durston*, 153 US 684, 687 (1894). It cannot be said that *Halbert* announced a rule either "'central to an accurate determination of innocence or guilt'" or "'"implicit in the concept of ordered liberty."'"" *Beard, supra* at 417 (citations omitted).

Indeed, the Supreme Court itself has recognized that appeals are not central to the accurate determination of guilt. In *Goeke v Branch*, 514 US 115 (1995), the Supreme Court held that the second exception for nonretroactivity did not apply to a new rule barring the dismissal of an appeal of a recaptured fugitive. The Court held that the new rule was not among the "small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty. Because due process does not require a State to provide appellate process at all, a former fugitive's right to appeal cannot be said

---

[5] *Gideon v Wainwright*, 372 US 335 (1963).

[6] The Supreme Court has noted that "the Sixth Amendment inquiry trains on the stage of the proceedings corresponding to [a defendant's] . . . trial, where his guilt was adjudicated, eligibility for imprisonment established, and prison sentence determined." *Alabama v Shelton*, 535 US 654, 665 (2002).

to be so central to an accurate determination of innocence or guilt, as to fall within this exception . . . ." *Id.* at 120 (citations and internal quotations omitted).

Here, defendant's guilt was established by his own plea, and the plea hearing, at which defendant was represented by counsel and accorded a broad array of procedural protections, was the "main event." Indeed, it is hard to imagine a more dispositive process by which guilt can be accurately determined, and in which the appellate process becomes less central to an accurate determination of guilt, than that in which a full admission to criminal conduct has come from the mouth of the defendant himself and in an environment in which the defendant has been accorded every protection against a coerced or mistaken confession.

*Halbert* does not call into question the validity of the procedures employed during the plea and sentencing aspects of defendant's experience with the criminal justice system; rather, *Halbert* dealt only with the right to appeal. The federal constitution imposes on the states no obligation to provide appellate review of criminal convictions. Because due process does not require a state to provide appellate process at all, the *Halbert* rule cannot be said to be among the """small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty.""" *Beard, supra* at 417 (citations omitted).

The Supreme Court has noted that it has "yet to find a new rule that falls under the second *Teague* exception." *Id.* For the reasons noted, I do not believe that the rule in *Halbert* is so exceptional as to constitute the first of such rules.

## IV. CONCLUSION

The rule of *Halbert*—that the "due process" and "equal protection" clauses require the appointment of counsel for defendants convicted on their pleas who seek access to first-tier review in the Court of Appeals—applies retroactively to all cases pending on direct review as of *Halbert's* issuance. However, it does not apply retroactively to collateral proceedings in cases already final as of that date. Because defendant's direct appeal ended in 2003, before the June 23, 2005, issuance of *Halbert*, the *Halbert* rule, in my judgment, is inapplicable to defendant.

Such a result comports not only with the analytical framework established by *Teague*, but also with the important considerations of judicial economy and finality that underlie that test. Here, defendant has received the full protection of the legal process when, through his own admission, his guilt was established. The state has a strong interest in the finality of that process and in not being required to constantly redefine that process, and in not being forced "to marshal resources in order to keep in prison

defendants whose trials and appeals conformed to then-existing constitutional standards." *Teague, supra* at 310. This is particularly so where the conviction is based on a guilty plea, entered after a defendant has received the full panoply of procedural protections accorded by the relevant provisions of the federal and state constitutions, statutes, and court rules. Because such a defendant has received all the protections that due process requires, we can take comfort in the finality of that conviction, in terms of compliance with *Teague* and compliance with the requirements of fundamental fairness and justice.

Accordingly, at least for the instant class of cases, the will of the people of Michigan, who initiated and approved the amendment to Const 1963, art 1, § 20, and whose elected representatives enacted MCL 770.3a, should be honored, and defendant's application for leave to appeal should be denied.

CORRIGAN, J., joins the dissenting statement of MARKMAN, J.

YOUNG, J., joins in the abeyance order but agrees with the analysis of the dissenting statement of MARKMAN, J.



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 16, 200 5                          _____
                                                     Clerk