# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC GALA,

        Defendant-Appellant.

UNPUBLISHED
September 5, 2017

No. 334584
Macomb Circuit Court
LC No. 2014-000198-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

ERIC GALA,

        Defendant-Appellee.

No. 335618
Macomb Circuit Court
LC No. 2014-000198-FH

---

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

In Docket No. 334584, a jury convicted defendant of vulnerable adult abuse in the second degree, MCL 750.145n(2), involving the care of his mother Norma Gala while he was her guardian and conservator. Defendant was found not guilty of a second count of vulnerable adult abuse involving the care of his father Chester, Sr. Gala while he was his guardian and conservator. The jury was hung on the third count of embezzlement from a vulnerable adult $100,000 or more, MCL 750.174a(7)(a), in regards to Norma. Defendant was sentenced to six months in the Macomb County Jail. Defendant appeals as of right the trial court's July 21, 2016 order denying defendant's post-conviction motions for a new trial based on prosecutorial misconduct, ineffective assistance, and violation of the right to confrontation. He also appeals the court's post-conviction denial of his motions for a *Ginther* hearing, as well as his motion to vacate his conviction based on insufficient evidence.

In Docket No. 335618, the prosecutor appeals by leave granted[1] the trial court's October 19, 2016 order denying the prosecutor's motion in limine to admit evidence of Norma's living conditions in the retrial of the embezzlement charge.

We affirm in both appeals.

## I. BACKGROUND

Defendant's parents were Chester, Sr. and Norma Gala. Defendant was appointed Norma's guardian on July 2, 2008, and Chester, Sr.'s guardian on March 29, 2010. Norma and Chester, Sr. moved from their Florida home and into the family owned Flamingo Motel in the city of Fraser, Michigan in August 2008. On November 6, 2013, a former employee of the Motel contacted the Fraser police department to report that defendant's parents were living in filthy conditions and that Norma was tethered to furniture. The officers responded, called an ambulance and had Chester, Sr. and Norma removed from the Motel and transported to Henry Ford Hospital. They were placed in nursing care after their discharge from the hospital.

## II. PROCEDURAL HISTORY

Defendant was initially charged with two counts of vulnerable adult abuse in the second degree – one for each of his parents based upon the living conditions in which they were found on November 6, 2013. There were several pre-trial motions. On December 18, 2014, defendant filed pretrial motions to dismiss for failure to preserve evidence, and to suppress the seizure of Norma and Chester, Sr. However, when the prosecutor moved to amend the information to add one charge of embezzlement regarding Norma, the case was remanded to the district court for a preliminary examination, and months passed before the December defense motions were heard. On June 11, 2015, the prosecutor moved to disqualify defendant's counsel Timothy Barkovic, under Michigan Rule of Professional Conduct (MRPC) 3.7, because the prosecutor intended to call Barkovic in the embezzlement case as a witness regarding the source and amount of his retainer. Defendant argued that defense counsel was not a "necessary" witness under MRPC 3.7 because counsel's testimony would merely relate to receipt of the funds, which was an uncontested matter, and that he had no information regarding the source of those funds, which was the relevant contested issue. On July 6, 2015, the court granted the prosecutor's motion. On July 24, 2015, defendant moved the court for reconsideration of its order disqualifying Barkovic. The court held a hearing on that motion and appointed attorney Derek Girwood for the limited purpose of advising defendant on the potential hazards associated with having an attorney also testify as a witness at trial. Defendant refused to consult with Girwood and an order reinstating Barkovic was issued on August 17, 2015.

Subsequent to Barkovic's reinstatement as counsel, the December 2014 defense motions were heard. Defendant argued that officers intentionally destroyed the Motel's DVR surveillance system. The court denied the motion for dismissal based upon the intentional spoliation of evidence but ruled that defendant could present testimony on the alleged spoliation

---

[1] *People v Gala,* unpublished order of the Court of Appeals, issued January 11, 2017 (Docket No 335618).

at trial. In support of his motion to suppress, defendant argued that on November 6, 2013, Norma and Chester Sr. were unlawfully seized without a warrant and that the seizure was unreasonable. The court denied that motion as well and found that defendant invited the officers to visit his parents, that their removal from the Motel was appropriate, and that defendant consented to the hospital of his choice.

Defendant's trial spanned over two weeks. It was a high conflict trial with numerous heated arguments from counsel and myriad accusations of wrongful conduct by counsel. On December 11, 2015, the jury announced its verdict of guilty of vulnerable adult abuse regarding Norma, not guilty of vulnerable adult abuse regarding Chester, Sr. and undecided on the embezzlement charge. Defendant filed multiple post-conviction motions for relief that were denied. He appeals from the order denying those motions.

In February 2016, the prosecutor refiled the embezzlement charge. In preparation for the re-trial, the prosecutor filed a Motion in Limine to Admit Relevant Evidence. A hearing was held on the motion on September 26, 2016. The prosecutor sought to admit evidence of Norma's living conditions at the motel to show that defendant kept Norma in deplorable conditions in order to embezzle her money. The court denied the prosecutor's motion. The court reasoned that evidence of Norma's living conditions would only become relevant if defendant claimed that he spent money on Norma's housing at the motel. The prosecutor appeals from the order denying the motion in limine.

## III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016), app den ___ Mich ___ (2017). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201, 489 NW2d 748 (1992). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "The standard of review is deferential and this Court 'is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. ANALYSIS

"To establish the crime of second-degree vulnerable adult abuse, the prosecutor must prove (1) that the defendant is a caregiver or other person with authority over the vulnerable adult, (2) that the victim is a vulnerable adult, (3) that the defendant engaged in a reckless act or reckless failure to act, and (4) that the reckless act or reckless failure to act caused serious physical harm or serious mental harm to a vulnerable adult." *People v DeKorte*, 233 Mich App 564, 567; 593 NW2d 203 (1999). For purposes of the vulnerable adult abuse statute, a "vulnerable adult" is someone over the age of 18 "who, because of age, developmental disability, mental illness, or physical disability requires supervision or personal care or lacks the personal and social skills required to live independently." MCL 750.145m(u)(*i*). MCL 750.145m(p) defines "reckless act or reckless failure to act" as "conduct that demonstrates a deliberate disregard of the likelihood that the natural tendency of the act or failure to act is to cause physical harm, serious physical harm, or serious mental harm." This Court has defined "deliberate disregard" as "a conscious decision to ignore the risk of harm that would flow from acting or failing to act." *People v Hudson*, 241 Mich App 268, 280; 615 NW2d 784 (2000). MCL 750.145m(r) states that, "serious physical harm" is "a physical injury that threatens the life of a vulnerable adult, that causes substantial bodily disfigurement, or that seriously impairs the functioning or well-being of the vulnerable adult." "Serious mental harm" is defined in MCL 750.145m(s) as "a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner."

Defendant does not dispute that Norma was a vulnerable adult or that defendant, as Norma's guardian, had authority over her. Defendant takes issue with the proofs on the third and fourth elements of the offense. He argues that there was insufficient evidence to support his conviction of vulnerable adult abuse for Norma because there was no evidence that he engaged in a reckless act or reckless failure to act, nor did he exhibit conduct or a conscious decision to proximately cause physical or serious physical harm to Norma. Defendant argues there was no evidence that Norma had any life-threatening injuries or substantial bodily disfigurement and that there was ample testimony that demonstrated she was well cared for.

There was sufficient evidence that the condition in which Norma was found on November 6, 2013, was deplorable. Costales, a discharged and disgruntled employee, testified to making a report to the police regarding Norma. Officer Poole, the responding officer, corroborated Costales claims that the room in which Norma lived was without water, had no direct heat, was dirty, and smelled overwhelmingly of feces and urine, like an "outhouse." Photographs were presented to the jury that depicted Norma and Chester, Sr. in multiple layers of stained clothing. Hospital records note that Norma's diaper was full and there was dried feces along her back. Testimony was introduced that Norma slept with an orange tow strap around her waist and when she was awake, she was frequently tethered to furniture. Photographs showed that her toenails were long and dirty. Dirt came out of her socks when they were removed. Officer Poole performed a turgor test and determined that Norma was dehydrated. She was in fact diagnosed with acute renal failure, malnourishment, and had stage two pressure sores on her hip, buttocks and feet that were caused by lack of circulation from lying in one position for too long. There is no doubt that living in this condition seriously impaired Norma's functioning or well-being. MCL 750.145m(r). Testimony provided that once properly hydrated not only did Norma's kidney function improve, but so did her mentation.

Defendant argues he personally did nothing to cause harm and was unaware of any harm she suffered. His trial testimony was consistent with his argument. The evidence in this case demonstrates that defendant delegated the responsibility for Norma's care to his wife Angela Gala, and Motel employees Alicia Good, Martin Krist, and Carmen Costales. However, defendant also admitted to being at the Motel every weekday. He knew that the Motel lacked heat and water in the room where Norma lived. He admitted to knowledge of her being tethered to prevent her wandering and to seeing her frequently. Given the testimony that she reeked of soil and the photographs demonstrating conditions that did not emerge overnight, the jury had ample evidence that he either participated in her poor care or was willfully blind to the conditions that were likely to cause harm.

Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a jury to find beyond a reasonable doubt that defendant recklessly failed to act. In other words, defendant engaged in conduct demonstrating a deliberate disregard for the likelihood of serious physical harm that Norma would suffer because of his failure to act. *DeKorte,* 233 Mich App at 567–568.

## IV. SEVERANCE, CONFRONTATION AND DUE PROCESS OF LAW

### A. PRESERVATION

The issue of severance is not preserved. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Barkovic orally moved the trial court to sever the vulnerable adult abuse counts from the embezzlement count at the motion hearing to disqualify defense counsel to avoid a potential conflict under MRPC 3.7. The motion to sever at that time was not based on defendant's constitutional right to receive a fair trial on the vulnerable adult abuse charge related to Norma and therefore was not preserved on that ground.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant motioned for the admission of the probate settlement agreement multiple times. The requests were denied by the court for reasons stated on the record. Therefore, this issue is preserved. The issue of Norma's treatment at Autumn Woods was raised by defendant at the beginning of trial. The trial court held the evidence was irrelevant and denied its admission. This issue is therefore preserved.

Defendant filed a motion in limine to admit evidence of the city of Fraser Department of Public Safety's retaliatory conduct wherein he argued that the actions of the Fraser police department and instant charges were motivated by ill-will and part of a pattern of continued harassment of his family and the Flamingo Motel. At a later proceeding, the court decided the evidence was irrelevant and denied its admission. This issue is therefore preserved.

Defendant did not move for a mistrial below, therefore that issue is not preserved.

## B. STANDARD OF REVIEW

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Katt*, 468 Mich.272, 278; 662 NW2d 12 (2003). We also review for an abuse of discretion a trial court's decision on a motion to sever charges. *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997). "An abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences perversity of will or the exercise of passion or bias rather than the exercise of discretion." *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). "Evidentiary errors are nonconstitutional." *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008). "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich. 484, 495-496; 596 NW2d 607 (1999) (quotations omitted). "The trial court's decision on close evidentiary questions cannot 'by definition' be an abuse of discretion." *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). Unpreserved nonconstitutional errors are reviewed for plain error affecting defendant's substantial rights. *People v Pasha*, 466 Mich 378, 383-384; 645 NW2d 275 (2002).

## C. ANALYSIS

### 1. SEVERANCE

Joinder of offenses is appropriate if they are related. Under MCR 6.120(B), offenses are related if they are based on:

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

"On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1)." MCR 6.120(C).

At the hearing on the prosecutor's motion to disqualify counsel, Barkovic requested severance of the embezzlement charge to eliminate any potential conflict under MRPC 3.7. The trial court denied the request on that basis. After argument and an informal offer of proof, the court stated, "Both are abused [sic], one physical and the other financial, of a vulnerable adult for the same time period." After hearing the actual testimony at trial, and in response to the prosecutor's motion in limine to introduce evidence of Norma's living conditions at the retrial of the embezzlement charge, the court opined, "I can't believe I did that, and I did, because the two are so separate now, having heard the testimony from the first trial."

The court was not required to sever the embezzlement charge at the first trial because defendant did not move the court for severance on the ground that he would not receive a fair trial on the vulnerable adult abuse charge related to Norma. MCR 6.120(C). However, the court had the power on its own initiative to sever charged offenses "when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each

offense." MCR 6.120(B). We agree with the trial court's post-trial conclusion that the embezzlement charge should have been severed from the vulnerable adult abuse charges. Contrary to the prosecution's pre-trial assertions, the embezzlement charge was not based on the same conduct as the vulnerable adult abuse charge. The vulnerable adult abuse charge involved defendant's conduct as Norma's guardian and the living conditions Norma was kept in by her guardian, while the embezzlement charge involved defendant's conduct as conservator and the handling of Norma's estate assets for his own benefit. It was not until the September 26 hearing on the prosecutor's motion in limine, that the prosecutor agreed that all the transfers making up the embezzlement charge predated October 6, 2013, the beginning date for the vulnerable adult abuse claims. The charged offenses were at least one month apart and therefore not temporally connected. See *People v Tobey*, 401 Mich 141, 152; 257 NW2d 537 (1977) (offenses were twelve days apart); See also *People v Daughenbaugh*, 193 Mich App 506, 510; 484 NW2d 690, judgment mod, app den in part 441 Mich 867; 490 NW2d 886 (1992) (offenses were thirteen days apart). Lastly, there is no evidence that the acts making up the embezzlement charge were part of single scheme or plan to neglect Norma and her living conditions. As discussed later in this opinion, in relation to the prosecutor's appeal, defendant's alleged acts of embezzlement were predicated on his control of Norma's estate funds and the basis for his financial decisions over a series of years predating the living conditions which formed the basis of the prosecutor's vulnerable adult abuse charge. The conduct involved in each was separate and not part of a single scheme or plan. However, the trial judge's decision to deny the severance based upon the offer of proof and arguments made at the time was not an abuse of discretion.

Even if the denial had been an abuse of discretion, defendant cannot show that the court's failure to act sua sponte was outcome determinative. Defendant argues that the trying of the embezzlement charge with the vulnerable adult abuse charges involving Norma was outcome determinative because he was acquitted of vulnerable adult abuse against Chester, Sr. for whom no embezzlement charge was involved. This contention ignores the differences in the evidence regarding Chester Sr. and Norma. There was evidence of hygiene neglect, dehydration, filth of living conditions, and quality of life for both Norma and Chester, Sr. However, Norma was tethered to furniture, while Chester, Sr. was not. Norma also was more progressed in her dementia and unable to communicate her needs, making her possibly more vulnerable than Chester, Sr. Further, Norma had physical conditions of neglect like wounds and bedsores that were not present with Chester, Sr. Thus, the fact that defendant was acquitted of the vulnerable adult abuse of Chester, Sr. is not proof that he was only convicted of the vulnerable adult abuse of Norma because he was also charged with embezzlement involving Norma's estate. Defendant cannot show that the error prejudiced him when the evidence demonstrating his guilt of vulnerable adult abuse of Norma was overwhelming. *People v Oros,* ___ Mich App ___, ___; ___ NW2d ___ (2017); slip op at 9.

## 2. EVIDENTIARY ISSUES

Defendant also argues that several evidentiary errors denied him a fair trial. Defendant argues he was denied a fair trial when the trial court refused his request to admit evidence of the probate settlement, evidence of Norma's treatment while at Autumn Woods nursing home, and evidence of the Fraser Department of Public Safety's bias against him.

"Logical relevance is determined by the application of Rules 401 and 402." *People v VanderVliet*, 444 Mich 52, 60; 508 NW2d 114 (1993), amended 445 Mich 1205; 520 NW2d 338 (1994). MRE 401 provides the definition of relevant evidence as

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

MRE 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

It is within the trial court's discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Blackston*, 481 Mich 451, 461; 751 NW2d 408 (2008) quoting MRE 403.

Defendant argues that the trial court should have allowed Michael Taylor, defendant's probate attorney, to testify that defendant's amended accountings were accepted as filed in the probate court, and presented the jury with the probate settlement records in response to questions it asked during deliberations. Defendant asserts that the records would have shown that his amended accountings were approved and that he was owed money from Norma's estate, which would have defended against the embezzlement charges. The court essentially made three rulings regarding the probate settlement agreement. The first ruling was that the agreement was not relevant to the criminal proceedings. During the testimony of Robert Cella, successor conservator for Norma and Chester, Sr., the court determined that the probate court settlement was not relevant to the criminal proceedings because the probate court considered expenses that were permitted in the probate matter that were not at issue in the criminal case. The court explained that any expenditures that were approved as appropriate would be relevant and that those could be shown independent of the settlement agreement. The court allowed defendant to offer the settlement as an offer of proof that there was a settlement in the probate case and to mark it as a proposed exhibit and make it part of the court file. The second ruling was that the agreement did not represent that defendant's amended accountings were approved, only that they were accepted. The third ruling was that it would be prejudicial to defendant for the jury to review the entire settlement agreement.

None of the court's rulings can be interpreted as an abuse of discretion. The settlement agreement was not relevant to defendant's criminal case. The embezzlement charge concerned specific transactions that defendant made while he was guardian of Norma and conservator of the estate of Norma. The settlement agreement did not account for the expenses claimed by defendant nor did it explain the transactions that were the focus of embezzlement. The settlement agreement also did not provide that defendant's accountings were approved. Defendant made multiple attempts to persuade the court that "accepted as filed" was

synonymous with "approved" however, independent inquiry proved otherwise. Three questions came from the jury during deliberations:

> 1) Can estate accountings be retroactively amended to reflect conservator reimbursement? If so, is there a time limit for filing such amendments, and what is the time limit?
>
> 2) Is a conservator allowed to defer reimbursement from an estate for multiple years after expending funds and then claim them in later years [sic] accountings?
>
> 3) Are conservators' expenditures on behalf of a ward eligible for reimbursement if they were expended prior to the conservatorship being granted or established?

Defendant sought to present the jury with the settlement agreement in response to its questions. Again, the court refused to give the jury the probate settlement agreement to review. The court's decision was not an abuse of discretion. The jury's questions all clearly regarded the procedure for claiming reimbursements. The settlement agreement would not have been helpful to answer their questions because its language regarding reimbursements was that defendant released all claims to reimbursements from Norma's estate. The court conferred with the probate court and it provided the same response to each jury question, "yes, but only with court approval." Defendant argued again that they were approved. However, Taylor, defendant's own witness disagreed, asserting, "the language is they are accepted as filed subject to the settlement agreement" and that court approval is required when there are objections filed and objections were filed in this case. The court's last ruling, that the settlement agreement would be prejudicial to defendant if given to the jury, was also not an abuse of discretion. The agreement provided without explanation, that "Disputed claims exist between [defendant] and HEIRS in the amount of $281,000 concerning the assets of NORMA." There was testimony of controversy over how the $230,006 in fire insurance proceeds was spent and the prosecutor claimed the amount of funds embezzled was well into the three-hundred-thousands. It was very likely that the jury would have attributed the amount in dispute documented in the settlement agreement as an amount embezzled, thereby unfairly prejudicing defendant.

The absence of the settlement agreement from evidence further did not deny defendant a fair trial or the opportunity to fully defend himself. Defendant was still permitted by the court "the opportunity to bring in all those persons who justified the actions of the defendant that warrant consideration that the monies taken here were utilized for the benefit" of Norma. In addition, defendant was allowed to call persons who participated in the settlement as witnesses to substantiate his expenses. Defendant took advantage of both opportunities.

Defendant next argues that he was denied a fair trial when he was not able to present evidence of Norma's treatment while she resided at Autumn Woods. Defendant sought to introduce evidence that Norma, while left unattended, fell and broke her hip. Defendant also wanted to introduce evidence of Norma's condition at the time of her passing; specifically, that Norma had sepsis, renal failure, pneumonia, dehydration, and a bladder infection. The court ruled that the evidence was irrelevant. That ruling was not an abuse of discretion. The court rightly wanted the jury to focus on how defendant managed Norma's care as opposed to being diverted to conditions at Autumn Woods.

Defendant also argues he was prejudiced by the court allowing the prosecutor to elicit testimony from Susan Warner assistant director of nursing at Autumn Woods that defendant nor his family visited Norma. Defendant contends the testimony was misleading because it did not also inform the jury of the no contact order in place in the probate court that prevented defendant and his family from visiting Norma. Since the defense's objection to this testimony was sustained, and the jury was informed to disregard it, no prejudice was incurred. Additionally, Barkovic gave testimony that there was a probate court order precluding family contact with Norma.

Defendant also argues that he was prejudiced by the court's ruling that he could not present evidence establishing that the Fraser Department of Public Safety was biased against him and the Motel. Defendant sought to admit evidence that the department targeted the Motel because it rented to black people, whom the department did not want in the city of Fraser, and that the department failed to take immediate action when the Motel caught on fire. Defendant contends that the evidence would be relevant to explain why room one where Chester, Sr. and Norma resided was without proper heat and water. The court again ruled that evidence of bias was irrelevant. This ruling was not an abuse of discretion. The condition of room one and the reason for its condition was testified to by other witnesses. Defendant asserts that without the evidence regarding bias, he was not afforded his right to confront the witnesses against him. This argument is without merit. The Sixth Amendment right to confrontation is not "an unlimited right to admit all relevant evidence or cross-examine on any subject" or "a right to cross-examine on irrelevant issues." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993).

### 3. MISTRIAL

Defendant last argues that the trial court should have declared a mistrial in defendant's case based on 1) Barkovic's outrageous conduct throughout the trial, 2) upon learning that Barkovic was no longer a licensed attorney, and 3) improper statements the court made to the jury regarding Chester, Sr.'s competency.

"A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (quotation marks omitted). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

Defendant argues that the court should have declared a mistrial because Barkovic's conduct was grounds for a new trial based on ineffective assistance of counsel. Even if Barkovic's conduct was at times quarrelsome, a mistrial is only warranted where defendant was prejudiced. The same is true in the context of ineffective assistance. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Defendant does not make the required showing here. Most of Barkovic's encounters with the court were outside the presence of the jury. Defendant's speculation that the jury could hear some of the confrontations is just that - speculation.

Defendant does not explain how any conduct was outcome-determinative. It is noteworthy that Barkovic's representation resulted in an acquittal of one charge and a hung jury on another.

Defendant's claim that the court should have declared a mistrial when it learned Barkovic was no longer a licensed attorney is abandoned for failure to provide any argument or citation to legal authority. See *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (internal citations omitted) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority[.]").

Defendant also argues that a mistrial was warranted because the court made improper statements to the jury regarding Chester, Sr.'s competency. This argument was waived at trial. During defendant's direct-examination of Detective Lisa Pettyes, Pettyes agreed with defendant that a district judge had declared Chester, Sr. competent two or three months after November 6, 2013. The following day, the court stated that defendant's representation of Chester, Sr. as competent was not accurate. The court clarified that the district judge may have declared Chester, Sr. competent to testify, but he was not declared competent in all respects. Barkovic requested the court explain to the jury the difference and the court responded that it would tell the jury that the only determination the district court made was whether he had "sufficient physical and mental capacity or sense of obligation to testify truthfully and understandingly." Barkovic agreed with the court that there were different concepts of competency and asked the court to read the above explanation to the jury. Defendant is bound by his counsel's waiver. *Sampeer v Boschma*, 369 Mich 261, 266; 119 NW2d 607 (1963).

## V. EFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "We review constitutional questions de novo." *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). "We review the trial court's factual findings for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

### B. ANALYSIS

"[T]he right to counsel is the right to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 653; 104 S Ct 2039; 80 L.Ed.2d 657 (1984). To demonstrate ineffective assistance of counsel, a defendant must show (1) that his defense counsel's performance was objectively deficient; and (2) that the deficient performance prejudiced his defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*, 463 Mich at 600.

Defendant first argues that counsel was ineffective for failing to interview any of defendant's prospective witnesses before trial. We reject this argument. "Decisions regarding

what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77. "Counsel's failure to call witnesses is presumed to be trial strategy." *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). Defendant produced a list of 411 witnesses whom he wanted Barkovic to call in his defense. We note at the outset, that defendant has failed to identify any witness whose testimony would have affected the trial outcome or any subject matter that was left unexplored due to the failure to call additional witnesses. This alone is fatal to his argument. Further, our review of the record at trial and post-trial supports a conclusion that counsel employed reasonable trial strategy in winnowing down the list from 411 to 33 witnesses. Barkovic and, his co-counsel and daughter Camilla Barkovic, met and discussed the relevancy of the witnesses on the voluminous list. Barkovic requested multiple times that defendant reduce the list but defendant refused to do so up until the time of trial. Finally, we note that counsel's reduced witness list achieved a favorable result on two of the three counts against defendant.

Defendant also asserts that he received ineffective assistance because his counsel was called as a witness by the prosecution to testify against him. Defendant contends that counsel was therefore, required to withdraw under MRPC 3.7. As discussed previously, it was at defendant's insistence that Barkovic represented him. The court did everything it could to advise defendant of the risks, including appointing independent counsel. Also, before Barkovic testified, defendant agreed on the record that he signed a document indicating that he thoroughly discussed the potentiality of a conflict of interest under MRPC 3.7 with Barkovic and still wished to continue with him as his counsel. The court allowed, and defendant agreed to allow, Barkovic's daughter, Camilla Barkovic to represent defendant and cross-examine Barkovic when he testified. Under these circumstances, defendant waived any claim of ineffective assistance of counsel when he made the decision to continue Barkovic's representation despite being advised of the affect Barkovic's testimony could have on his case.

Defendant next asserts that Barkovic's preoccupation with his own matter before the attorney discipline board effected his representation of defendant. The record supports that there was an issue with Barkovic's status to practice law, but there is no evidence that he was preoccupied with the issue or that it affected his representation of defendant.

The record reveals that after the close of proofs the court became aware that Barkovic was ineligible to practice law. Defendant argues that Barkovic was too pre-occupied with his disciplinary issues to provide effective assistance to him. He argues that if he would have known about Barkovic's licensing issue, he would have asked for a new attorney. Defendant's contention that Barkovic was distracted by the external issue of his licensing is speculative. In the record before this Court, Barkovic's licensing only became an issue on the second to last day of trial, after the proofs were closed and before the jury completed deliberations. Defendant does not allege when Barkovic's issues with the State Bar Association began or how they affected his performance.

Defendant next argues that his counsel's "abhorrent and contemptuous behavior" which resulted in a $250 fine and 20-day jail sentence, infected defendant's trial. Defendant cites three instances of Barkovic's behavior which defendant argues infected his trial. The first instance led to Barkovic being held in contempt of court and occurred outside the presence of the jury. The court told Barkovic to make a copy of exhibits for the prosecutor and Barkovic refused. He first disparaged the prosecutor by saying that he did not trust her to make copies and refused to turn over the originals to her. He then refused to go back with the prosecutor to make the copies. The prosecutor and Barkovic then had a verbal exchange in the back hallway. The court held that Barkovic was in contempt for direct defiance of an order, was to pay the court a $1,000 fine by the following Tuesday, and would be sentenced to seven days in jail after the verdict was rendered. The judge increased the jail sentence to 20 days when Barkovic became insistent on going to jail at that moment. The fine was reduced to the $250 statutory amount. The second instance also occurred outside the presence of the jury. The court was instructing the prosecutor and Barkovic to review certain documents and the procedure for their admission. The court told Barkovic, "pay attention" and "You know, you are just so disrespectful, Mr. Barkovic. It is incredible." During the first two instances, decorum was reestablished when the jury entered. The third instance, recounted by the court the following day, occurred at a sidebar:

> As [the prosecutor] started to say something else, Mr. Barkovic in an assaultive manner turned to [the prosecutor] and told her to shut her mouth at a tone that was frightening, aggressive, and, quite frankly, assaultive in the manner in which he did it.

> Instinctively the deputy told him, "That's enough, Mr. Barkovic," and delivered his attention away from the prosecutor to the deputy where he then told the deputy, "Don't you tell me anything." I then told him to step back, away from the prosecutor, which he complied with."

This was not a bench trial. Defendant was convicted by jury. All but one of the instances complained of by defendant occurred outside the presence of the jury. The instance that did occur in front of the jury was at a sidebar. The record gives no indication of whether the jury heard what occurred. Defendant's trial spanned 16 days. Defendant has not shown how this isolated and brief event prejudiced the entire trial.

Defendant also argues that Barkovic was ineffective for failing to object to certain testimony and to remarks made by the prosecutor during closing argument. "Defense counsel is given wide discretion in matters of trial strategy and there is accordingly a strong presumption of effective assistance of counsel. Declining to raise objections can often be consistent with sound trial strategy." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008) (internal citation omitted).

Defendant first argues that Barkovic should have objected to Good's testimony regarding maggots surrounding a cut on Norma's ankle, because the testimony was outside of the relevant timeframe and there was no supporting evidence of maggots. Objections to Good's testimony regarding maggots in Norma's wound would have been meritless because there was supporting evidence of maggots and the evidence was relevant to a contested issue of fact. Good testified that while caring for Norma, she once observed maggots inside of a cut on Norma's ankle and

picked them out with tweezers and cleaned the cut. She did not provide a timeframe as to when she observed and cleaned the cut. The defense produced a Henry Ford Hospital record dated July 21, 2013, which stated that Norma had a cut on her ankle that was scabbed over and that the cut reopened and re-scabbed because Norma picked at it. The hospital record did not establish that there were never maggots in the cut. Rather, it depicted what the cut looked like on July 21, 2013. Barkovic was not required to object to the testimony because it was relevant. The vulnerable adult abuse charges put Norma's care, living conditions, and health directly at issue. Therefore, the testimony was relevant to a main contested issue and an objection would have likely been overruled. "[C]ounsel is not ineffective for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

The failure to object in this instance can also not be ruled out as trial strategy. It may have been Barkovic's strategy not to object to Good's testimony, because defendant also sought to admit evidence from the same period to show that defendant sought medical care for Norma.

Defendant also argues that his counsel was ineffective for failing to object to Good's testimony that she left her employment for publicity reasons. When the prosecutor began to ask Good why she left her employment, the court interrupted. Both the court and Barkovic expressed concern that Good would inject external media issues into the trial. The court cautioned the prosecutor not to ask any questions related to newspapers or the media. Because the court interjected on this point and cautioned the prosecutor not to ask any questions related to the media, an additional objection from Barkovic would have been futile. *Id.* at 245.

Defendant's contention that Barkovic failed to object to testimony that defendant did not support Norma with food or clothes or medicine while she was at Autumn Woods is incorrect. Barkovic objected to "any reference as to what the family may have brought or didn't bring . . . for the reasons announced at sidebar" and the court sustained his objection.

Defendant further argues Barkovic was ineffective for failing to object to the prosecutor's disparaging remarks about Barkovic and defendant's son during closing argument. Defendant cites the prosecutor's closing argument references to Barkovic as a "Jekyll & Hyde" act and Chester, Jr. not being a real Harvard University student. Both remarks were comments on their credibility as witnesses. The prosecutor argued that Chester, Jr. told the jury that he attended Harvard University to make the jury "look at him a certain way," as someone "trustworthy, smart, credible, because he goes to Harvard." The prosecutor called the school Chester, Jr. attended an "extension school." The prosecutor then proceeded to argue that the evidence regarding Chester, Jr. did not meet the characteristics expected above, from a Harvard student. The prosecutor's Jekyll and Hyde remark was a comparison of Barkovic's demeanor on the witness stand and that as defendant's counsel. The prosecutor argued, "You saw how he acted in court. And then you saw, when he got up on the stand and acted like some kind of wounded bird when I interrupted him when he was giving his long speeches about constitutional rights, you saw all that." Because "[a] prosecutor may argue from the facts that a witness is credible or that a witness is not worthy of belief," *Unger*, 278 Mich App at 240, Barkovic's objections would have been without merit.

Defendant lastly contends that because of counsel's errors, the trial court should have granted his new counsel's request for a *Ginther* hearing. Defendant's appellate counsel filed a

post-conviction motion for a new trial based on ineffective assistance in the trial court. At a hearing on July 21, 2016, the court held

> Your motion is denied and the extent that this Court went to preserve your client's rights to cross examine his attorney, to get new Counsel, to have your client consult with an attorney in addition to his retained attorney, it was your client just being absolutely adamant that he wanted Mr. Barkovic to proceed with the case, he refused to consult with another attorney that this Court appointed, just to be there to consult with him, this Court bent over backwards to protect your client's rights associated with his right to an attorney and the representation in this case, all efforts by this Court were specifically rejected on the record by your client. Your motion is denied.

The trial court only addressed one of the many claims of ineffective assistance in that ruling. However, the defendant fails to persuade this Court that a hearing would have produced any additional information bearing on the issue. Our review of the fulsome record demonstrates that defendant's other multiple assertions of ineffective assistance were also devoid of merit.

## VI. THE RIGHT TO COUNSEL

### A. STANDARD OF REVIEW

We review unpreserved constitutional errors for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763.

### B. ANALYSIS

A defendant's right to the assistance of counsel at trial is guaranteed by both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Russell*, 471 Mich 182, 187–188; 684 NW2d 745 (2004). "The Sixth Amendment right to counsel at trial is fundamental to the fair and accurate determination of guilt because the trial is the focus of the entire criminal proceeding-the 'main event,' so to speak." *People v Houlihan*, 474 Mich 958, 966; 706 NW2d 731, 738 (2005). "*Gideon v Wainwright*, [372 U.S. 335; 83 S.Ct. 792; 9 L.Ed.2d 799 (1963)], held that the Sixth Amendment right to counsel was so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment." *Evitts v Lucey*, 469 US 387, 394; 105 S Ct 830; 83 L Ed 2d 821 (1985) (citation and quotation marks omitted). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland v Washington*, 466 US 668, 685; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant argues that he was denied the right to counsel while Barkovic was testifying and that the quandary of having to cross-examine his own lawyer presented ethical considerations that should have moved the court to disqualify Barkovic under MRPC 3.7. Both arguments fail.

The first argument is factually incorrect. Defendant was not without legal representation while Barkovic was testifying. Attorney Camilla Barkovic, Barkovic's daughter, acted as defendant's counsel with defendant's permission, while Barkovic testified and cross-examined

-15-

him.   Defendant does not argue that Camilla's representation was inadequate or that her performance was deficient.

The second argument is waived.  *People v Carter*, 462 Mich 206, 231; 612 NW2d 144 (2000) ("Waiver is the intentional relinquishment ... of a known right.") (Citation and quotation marks omitted).   As was noted previously, defendant was warned about the danger of representation by Barkovic and insisted that he remain his counsel.  Additionally, defendant has failed to articulate how Barkovic's testimony or the act of testifying itself affected his substantial rights such that despite his waiver we should vacate the conviction because of plain error.

## VII.  PROSECUTORIAL MISCONDUCT

### A.  STANDARD OF REVIEW

"This Court reviews claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

"No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction."  *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000).  A contemporaneous objection gives the trial court "an opportunity to correct the error" and is "by far the best time to address a defendant's constitutional and nonconstitutional rights." *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994).

### B.  ANALYSIS

Defendant first argues that the prosecutor committed misconduct requiring reversal by suppressing evidence of the probate court settlement.  Defendant contends that the prosecutor kept the probate court settlement and order to approve settlement from the jury.  This argument is baseless.  The trial court, and not the prosecuting attorney, determined that the probate court settlement and final order would not be made available to the jury.

Defendant's second argument is equally lacking in merit.  Defendant argues that it was prosecutorial misconduct to call defendant's counsel as a witness because by doing so, defendant's counsel was left with insufficient time to prepare for trial.  This is essentially an argument that defendant's counsel was ineffective.  Defendant waived a claim of ineffective assistance associated with his counsel testifying at trial.

Defendant next argues that the prosecutor committed misconduct by falsely presenting evidence that defendant and his family did not visit Norma nor bring her any clothes or medicine while she was in Autumn Woods.  Defendant was not prejudiced by this remark because defense counsel objected to the testimony and asked that it be stricken, and the court sustained the objection and ruled the testimony irrelevant.  *Grant*, 445 Mich at 551.

Defendant next argues that the prosecutor committed misconduct by presenting false evidence regarding Chester, Jr. to the jury.  In closing argument the prosecutor argued Chester, Jr. was not a real Harvard University student.  As discussed above, the remark was a comment on Chester Jr.'s credibility as a witness.  The prosecutor argued that Chester, Jr. told the jury that he

attended Harvard University to make the jury "look at him a certain way," as someone "trustworthy, smart, credible, because he goes to Harvard." The statement and related references did not amount to prosecutorial misconduct. "A prosecutor may argue from the facts that a witness is credible or that a witness is not worthy of belief." *Unger*, 278 Mich App at 240. Defendant additionally argues that the prosecutor presented false evidence that Chester, Jr. was involved in embezzling money from the estate of Norma by receiving more than $30,000 in a MUTMA[2] account created on his behalf. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger 278 Mich app.* at 241. At the post-conviction motion hearing on this issue, the court found that "[t]racing the money was appropriate from the original account. The court does not find that was prejudicial or erroneous misconduct." It was not misconduct for the prosecutor to question defendant's documented transfer of funds directly from an account marked for the benefit and care of Norma to an account that was for the benefit of one of defendant's children. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

Defendant lastly argues that the prosecutor committed multiple instances of misconduct in her closing argument by: 1) repeatedly arguing that the probate court had not accepted and approved defendant's accountings, 2) denigrating defendant's son, Chester, Jr. and defendant's counsel, 3) telling the jury that defendant requested the reissuance of a check without showing the jury the check, 4) arguing that defendant did not present any evidence of Norma having died from her treatment in the nursing home, 5) arguing that defendant only presented one video of Norma in good condition, 6) arguing that defendant failed to establish the Fraser police had a motive to force the Flamingo Motel to close, and 7) arguing that defendant did not produce certain witnesses from Adult Protective Services and the Fraser police department.

The prosecutor did not commit misconduct by arguing that the probate court had not accepted and approved defendant's accountings. Taylor did not testify that defendant's accountings were accepted as filed and the jury was not presented with the settlement agreement. Further, discussions regarding whether accepted as filed also meant approved occurred outside of the jury's presence. Therefore, the prosecutor's statement was supported by, in this case, the lack of facts in evidence. The prosecutor also did not commit misconduct when she questioned Chester, Jr.'s attendance at Harvard University or referred to Barkovic's performance at trial as a "Jekyll and Hyde" act. As discussed above, the prosecutor's remarks were related to Chester, Jr.'s and Barkovic's witness credibility. "The prosecutor was permitted to argue from the facts that defendant or defendant's witnesses were unworthy of belief." *Id*. at 67.

It was also not misconduct for the prosecutor to argue that defendant's request to reissue a check was denied, without having presented the check to the jury. The prosecutor's statement was otherwise supported by prosecution exhibit 60-2, which was the June 24, 2009 court order that denied defendant's motion to re-issue the insurance check in the name of defendant and ordered it deposited into Norma's account.

---

[2] Michigan Uniform Transfers to Minor Act, MCL 554.521 *et seq*.

The remainder of the prosecutor's arguments regarding Norma's treatment in the nursing home, the motives of the Fraser police, the one video of Norma, and the defense not producing witnesses from Adult Protective Services and the Fraser police department, also did not constitute prosecutorial misconduct. These arguments were either all proper rebuttal to defendant's argument in his closing or related to promises defendant made in his opening statement. It is not prosecutorial misconduct for the prosecutor to observe that the defense failed to call corroborating witnesses or "prove[] what it said it would in its opening statement." *People v Fields*, 450 Mich 94, 115-116; 538 NW2d 356 (1995).

## VIII. UNREASONABLE SEARCH AND SEIZURE

### A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion to suppress evidence and its findings of fact for clear error. *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289.

### B. ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." US Const, Am IV. The Michigan provision is similarly worded. *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999); See Const 1963, art 1, § 11. "All evidence obtained in violation of this protection is inadmissible in a state court." *People v Brown*, 127 Mich App 436, 440; 339 NW2d 38 (1983). However, "[t]he suppression of evidence should be used only as a last resort." *People v Frazier*, 478 Mich 231, 247; 733 NW2d 713 (2007). "[T]he exclusionary rule is 'a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights ....' " *People v Anstey*, 476 Mich 436, 447-448; 719 NW2d 579 (2006), quoting *People v Hawkins*, 468 Mich 488, 512-513; 668 NW2d 602 (2003) (emphasis deleted). "Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *Barbarich*, 291 Mich App at 472.[3] "Consent is an exception to the warrant requirement." *People v Mahdi*, 317 Mich App 446, ___; 894 NW2d 732 (2016). "The consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given. The validity of the consent depends on the totality of the circumstances." *People v Marsack*, 231 Mich App 364, 378; 586 NW2d 234 (1998) (internal citations omitted). The exception "still requires reasonableness and probable cause." *People v Brzezinski*, 243 Mich App 431, 434; 622 NW2d 528 (2000).

---

[3] Defendant contends, without any citation to legal authority that he had standing to challenge the search and seizure because he was the court-appointed guardian for Norma. We do not address the issue of standing because 1) the argument is not supported with legal authority, *Hughes v Almena Twp*, 284 Mich App 50, 71; 771 NW2d 453 (2009); 2) it is not fully briefed, *Id.* at 72; 3) it is not a part of the questions presented, MCR 7.212(C)(5), *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003); and 4) whether defendant had standing or not to contest the search and seizure, the record demonstrates that he consented.

Here, the trial court concluded after an evidentiary hearing, that defendant invited the officers to visit Norma and Chester, Sr. and consented to Norma being transported to Henry Ford Hospital. The record supports the court's ruling. Officer Poole testified that after he told defendant why the police were there, defendant asked the officers if they wanted to meet his parents. There was no other evidence presented at the hearing to dispute that officers learned the location of and gained entry to Norma and Chester, Sr.'s room, other than by defendant. While defendant argues that he did not give consent, he also does not present an alternative theory of how they entered the room against his consent.

Officer Poole further testified that once in the room, he observed it to be dark and the air pungent with the smell of urine and feces. He observed Norma and Chester, Sr.'s bedding to be soiled and wet. He observed Norma tethered to a chair. He testified that she had "stuff" on her hands that looked and smelled like fecal matter. Although defendant told him he was guardian over Norma, he could not produce his guardianship papers to show that was in fact true. Paramedic Ryan Winowiecki corroborated Officer Poole's observations. He further determined that both Norma and Chester, Sr. had signs of dehydration and that Norma had open wounds on her feet and hip. He also had concerns about their cognitive faculties after they displayed some confusion and were unable to answer simple questions. Winowiecki testified that defendant was not initially in agreement with Chester, Sr. or Norma going to the hospital however, defendant later agreed for Norma's transport to Henry Ford hospital and Chester, Sr. voluntarily left in the ambulance with Norma.

The uncontroverted testimony supported that defendant invited officers to see the room where Norma and Chester, Sr. resided, and agreed for Norma to be transported to a hospital that he chose.[4] The decision to have Norma and Chester, Sr. removed from the Motel was reasonable given the testimony of their physical and living conditions, their inability to answer questions for themselves and defendant's failure to produce guardianship paperwork.

Defendant also argues in passing that he was not read his *Miranda* rights under *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). This argument is abandoned on appeal. "*Miranda* warnings need be given only in situations involving a custodial interrogation." *People v Zahn*, 234 Mich App 438, 449; 594 NW2d 120 (1999). "The term

---

[4] The prosecutor also argued that the emergency-aid exception to the warrant requirement was applicable. The trial court did not rule based on this exception. "[T]he emergency-aid exception to the warrant requirement allows police officers to enter a dwelling without a warrant under circumstances in which they reasonably believe, based on specific, articulable facts, that some person within is in need of immediate aid." *People v Tierney*, 266 Mich App 687, 704; 703 NW2d 204 (2005). "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v Stuart*, 547 US 398, 403; 126 S Ct 1943; 164 L Ed 2d 650 (2006). However, the testimony from Officer Poole and paramedic Winowiecki was that neither Norma nor Chester, Sr. were in any immediate life-threatening danger. Both testified that their concerns were for how their conditions would deteriorate if left in the Motel room given their then current condition.

custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. (Citations and quotation marks omitted). Defendant does not argue he was subjected to custodial interrogation. "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

## IX. POLICE MISCONDUCT

### A. STANDARD OF REVIEW

We review defendant's preserved constitutional due process claim de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). We review the trial court's findings of fact for clear error. *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1995). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289.

### B. ANALYSIS

Defendant contends that he is entitled to have his conviction set aside because Fraser police officers destroyed evidence that deprived him of a defense. He further contends that the destruction of the evidence constituted a *Brady* violation pursuant to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. In order to establish a *Brady* violation, a defendant must show:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. [*Strickler v Greene*, 527 US 263, 281–282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).]

"The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (internal citations omitted). Evidence is favorable when it is exculpatory or able to be used for impeachment. *Greene*, 527 US at 281-282. "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 280 (citation and quotation marks omitted).

Defendant was unable to prove any of the factors making up a *Brady* violation at the October 2015 evidentiary hearing. Admittedly, defendant did not know exactly what the video from November 6, 2013, would have shown. Defense counsel merely claimed that it was potentially exculpatory. Next, defendant did not establish that the Fraser police suppressed the video evidence. Defendant did not initially establish that the DVR was within any officer's

control. Although defendant testified that he was with Sergeant Ashley when he heard a loud bang, which he later attributed to destruction of the DVR, he did not observe officers near the DVR around the same time. Chester Jr., who was in the office where the DVR was located, also did not testify to any officers being near the surveillance system. Indeed, Sergeant Ashley's testimony was that he had no knowledge of where the Motel's surveillance equipment was located. Additionally, defendant failed to show that he was prejudiced without the evidence. Defendant argued that the video would have shown Norma and Chester Sr. walking around in good health. It was undisputed however, that the surveillance camera only captured the door to Norma and Chester Sr.'s room. The video would not have shown the living conditions inside of their room, which formed the bases of the vulnerable adult abuse charges against defendant. Because defendant failed to show that the surveillance video was favorable, suppressed or material, he fails to establish a *Brady* violation. See *Greene*, 527 US at 281-282.

Defendant also failed to prove his major claim that the Fraser police destroyed the Motel's surveillance equipment by striking the DVR box and attempting to cut the wires to the system's surveillance cameras. At the evidentiary hearing, defendant presented five witnesses,[5] in addition to himself, who all testified to the same series of events: The surveillance cameras and the door buzzer worked on November 5, 2013; Fraser police were at the Motel on November 6, 2013; and the surveillance cameras and the door buzzer did not work on November 7, 2013. From this testimony, defendant asked the court to conclude that the Fraser police were responsible for denting the DVR box and cutting the door buzzer wires with the intent to cut the surveillance camera wires. The court did not err in finding otherwise. Each of defendant's witnesses testified that he or she did not see who cut the wires to the door buzzer or strike the DVR box. Defendant testified that while he also did not see anyone cut the wires or damage the DVR box, he heard a loud bang while officers were at the Motel and discovered the door buzzer was not working that night after they left. Chester Jr. and Angela, both of whom were at the Motel with defendant, did not corroborate defendant's testimony. In other words, neither testified to hearing a loud bang and neither mentioned any problems exiting or entering the office the night of November 6 because of a broken door buzzer. It is also actually unknown when on November 6, the destruction occurred, given that there was no testimony that the front desk was ever unstaffed. Additionally, because Chester Jr. testified that defendant and Jeffrey had to trace the door buzzer wire to learn that it was cut, it is assumed that the person who cut the wire would have had to spend the same amount of time. Because the door buzzer wire was in fact cut and not the surveillance camera wires, defendant was also asking the court to assume that whoever cut the door buzzer wires intended to cut the camera wires. However, it was just as equally possible that the door buzzer wires were cut intentionally and the DVR smashed in order to make the Motel vulnerable to theft. Given the record, it was not error for the court to find that there was insufficient proof that the Fraser police were responsible for the damage to the Motel's DVR box and door buzzer wires.

---

[5]Jeffrey Fraser, Joseph Meek, Joseph Manderachia, Angela Gala, and Chester Gala, Jr.

## X. CUMULATIVE ERROR

### A. STANDARD OF REVIEW

We review the cumulative effect of errors "to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001).

### B. ANALYSIS

"It is true that the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). "[O]nly actual errors are aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 293 n 64; 531 NW2d 659 (1995). "In order to reverse on the grounds of cumulative error, . . . the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Knapp*, 244 Mich App at 388; (internal citations omitted).

In this case, we found no error. As noted even if we assumed error in the trial court's decision not to sever the embezzlement charge from the vulnerable adult abuse charges, defendant was not prejudiced by the error given the amount of overwhelming evidence demonstrating his guilt beyond a reasonable doubt for the charge of vulnerable adult abuse regarding Norma.

## XI. PROSECUTOR'S MOTION IN LIMINE

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion the trial court's decision whether to admit evidence. *People v Carrier*, 309 Mich App 92, 103; 867 NW2d 463 (2015). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no excuse for the ruling made." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Where the admissibility of evidence depends on the application of a rule of evidence or a statute, it is a question of law subject to de novo review. *Carrier*, 309 Mich App at 103-104.

### B. ANALYSIS

"Generally, all relevant evidence is admissible at trial." *Aldrich*, 246 Mich App at 114. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "However, even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." *Aldrich*, 246 Mich App at 114; MRE 403.

MCL 750.174a(1) reads, "A person shall not through fraud, deceit, misrepresentation, coercion, or unjust enrichment obtain or use or attempt to obtain or use a vulnerable adult's

money or property to directly or indirectly benefit that person knowing or having reason to know the vulnerable adult is a vulnerable adult." A "vulnerable adult" is defined as someone over 18 years of age "who, because of age, developmental disability, mental illness, or physical disability requires supervision or personal care or lacks the personal and social skills required to live independently." MCL 750.174a(15)(c); See MCL 750.145(m), (u)(*i*). Defendant is specifically charged with MCL 750.174a(7)(a), which provides:

> If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $50,000.00 or 3 times the value of the money or property used or obtained or attempted to be used or obtained, whichever is greater, or both imprisonment and a fine:
>
> (a) The money or property used or obtained, or attempted to be used or obtained, has a value of $100,000.00 or more.

The prosecutor argues that the evidence of Norma's living conditions is admissible as res gestae evidence and as other acts evidence under MRE 404(b). Res gestae evidence is evidence of other criminal acts that are "so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978) (quotation omitted). It is evidence intended "to give the jury an intelligible presentation of the full context in which disputed events took place." *People v Scholl*, 453 Mich 730, 741-742; 556 NW2d 851 (1996). Such evidence is "potentially relevant and admissible." *People v Jackson*, 498 Mich 246, 268; 869 NW2d 253 (2015). Res gestae evidence must comply with MRE 404(b). *People v Jackson*, 498 Mich 246, 268-269; 869 NW2d 253 (2015). Evidence offered under MRE 404(b) is evidence of other crimes, wrongs or bad acts and is not admissible if it is only used to show conduct in conformity with those acts. However, the evidence may be admissible if offered for another purpose, such as

> proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

The prosecutor argues that evidence of Norma's living conditions is part of the res gestae of the embezzlement charge because it provides the jury with the "full context" of the unjust relationship between defendant and Norma. We disagree.

The trial court ruled that the evidence of Norma's living conditions would not be relevant, unless defendant argued that Norma's money was used to cover her housing and costs of living. This ruling was not an abuse of discretion. At the September 26 hearing on the motion, the prosecutor agreed that all the transfers making up the embezzlement charge predated October 6, 2013; the 30-day period for which the court allowed testimony about Norma's living conditions at the first trial. The prosecutor still argues that the evidence of Norma's living conditions is relevant under MRE 404(b) to explain defendant's opportunity to embezzle. The opportunity to embezzle was created by the undisputed fiduciary relationship and Norma's equally undisputed mental vulnerability, not her deplorable living conditions. Additionally,

admission of evidence of the living conditions is substantially more prejudicial than probative. MRE 403. Norma's abysmal living conditions on November 6 would likely invoke passions and have minimal probative value regarding financial transactions that pre-date those conditions by months and years.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens